Mitchell Taylor Button
Dusty Button
101 Ocean Sands Ct.
Myrtle Beach, SC 29579
310-499-8930
Worldofdusty@gmail.com

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

**PHOENIX DIVISION**

| | |
|---|---|
| MITCHELL TAYLOR BUTTON AND DUSTY BUTTON<br><br>PLAINTIFFS,<br>V.<br><br>NICK KINGSLEY (a/k/a @k1ngs\|3y_)<br><br>DEFENDANT. | Case No: 2:25-CV-02619-PHX-SMB<br><br>**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiffs Mitchell Taylor Button and Dusty Button allege as follows:

INTRODUCTION

1. Plaintiffs Mitchell Taylor Button and Dusty Button bring this action against Defendant Nick Kingsley for defamation per se, false light invasion of privacy, and intentional infliction of emotional distress arising from Defendant's public Instagram statements accusing Plaintiffs of sexual and criminal misconduct as fact.

2. Defendant did not merely state that Plaintiffs were involved in a civil lawsuit or that allegations had been made against them. Defendant publicly stated, among other things, that Taylor 'diddled kids' and that Plaintiffs were 'sexual predators' who did not deserve a platform. Those statements communicated to ordinary readers that Plaintiffs had committed sexual abuse, predatory sexual misconduct, and/or criminal acts involving minors. See Milkovich v. Lorain Journal Co., 497 U.S. 1, 18-19 (1990) (statements implying provably false facts are actionable); Yetman v. English, 168 Ariz. 71, 79-82 (1991) (where reasonable listeners could understand a statement as asserting fact, the issue is actionable and may be for the jury).

3. Plaintiffs deny those accusations. Plaintiffs have never been criminally charged, arrested, prosecuted, convicted, or adjudicated liable for any sexual offense, child abuse offense, sex trafficking offense, or similar criminal misconduct arising from the allegations referenced by Defendant.

4. Defendant published the statements after a civil lawsuit was filed in Nevada in 2021. The existence of that disputed civil lawsuit did not itself establish the truth of Defendant's accusations. Plaintiffs allege that Defendant's comments asserted that Plaintiffs committed the underlying misconduct, rather than merely reporting that allegations had been made in a civil proceeding.
5. Defendant published the statements on public Instagram pages and/or comment threads viewable to substantial audiences in the automotive, dance, social-media, and professional communities in which Plaintiffs' reputations and prospective work mattered.
6. Defendant acted at least negligently and, to the extent a heightened fault standard applies, with actual malice. Plaintiffs allege that Defendant knew his accusations were false or subjectively entertained serious doubts about their truth. As to the May 2025 statement, Plaintiffs rely on Defendant's prior exposure to the stories described below, the content displayed in those stories, and his subsequent categorical accusation. Actual malice may be established through circumstantial evidence of knowledge of falsity or subjective serious doubts; mere failure to investigate does not by itself establish actual malice. See St. Amant v. Thompson, 390 U.S. 727, 731-32 (1968); Harte-Hanks Commc'ns, Inc. v. Connaughton, 491 U.S. 657, 688, 692 (1989).
7. Before Defendant published his May 2025 comment, both Plaintiffs personally observed Defendant’s Instagram username in the viewer lists for stories

displaying documents concerning the Nevada allegations. Defendant subsequently blocked Plaintiffs' informational account, later unblocked it, and then blocked it again. The circumstances of Plaintiffs' observations and Defendant's account activity are described below.

8. Plaintiffs do not seek to relitigate other cases in this action. Separate litigation and allegations by other parties do not establish the truth of Defendant's statements, do not excuse Defendant's publication, and do not eliminate the separate, later, incremental, and aggravated harm caused by Defendant's own conduct. Courts may take judicial notice of the existence of court records in proper circumstances, but not the truth of disputed factual allegations or prejudicial factual characterizations contained in those records. See Lee v. City of Los Angeles, 250 F.3d 668, 689-90 (9th Cir. 2001); Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 999-1003 (9th Cir. 2018).

9. Plaintiffs allege facts concerning other litigation only where necessary to provide context, explain falsity, explain Defendant's knowledge, or distinguish disputed civil allegations from criminal/sexual accusations stated as fact. Plaintiffs do not concede the truth of allegations made in separate cases, and no allegation in this First Amended Complaint should be read as adopting disputed allegations, characterizations, or factual findings from separate litigation as true.

10. Plaintiffs had been attempting to rebuild professional relationships and opportunities damaged by prior publicity. Defendant's statements republished and

amplified the most inflammatory accusations as present-tense fact during that recovery period, causing renewed reputational harm, renewed professional loss, emotional distress, and additional damage separate from the original 2021 publicity.

PARTIES

11. Plaintiff Dusty Button is a citizen of South Carolina. Before 2021, Dusty was a professional ballet dancer. Plaintiffs dispute that Dusty's prior professional recognition establishes either all-purpose or limited-purpose public-figure status for the publications at issue. All-purpose status concerns pervasive fame or notoriety; limited-purpose status requires consideration of the person's role in the particular public controversy. Plaintiffs rely on the facts concerning their professional history, withdrawal from public-facing activity, and efforts to respond to accusations described below, rather than an assumption that public-figure status automatically expires. See Gertz v. Robert Welch, Inc., 418 U.S. 323, 351-52 (1974).

12. Plaintiff Mitchell Taylor Button is a citizen of South Carolina. Before 2021, Taylor worked in and was known within portions of the automotive industry. Plaintiffs dispute that his prior industry recognition establishes all-purpose public-figure status or that his role in the controversy establishes limited-purpose public-figure status for these publications. Plaintiffs allege actual malice in the alternative as described below.

13. Defendant Nick Kingsley is, upon information and belief, a citizen and resident of Arizona. Defendant operates and/or uses the Instagram account @k1ngs|3y_ and participates in online automotive and social-media communities.

14. Defendant used his social-media account to publish the defamatory statements alleged in this First Amended Complaint.

## JURISDICTION AND VENUE

15. This Court has subject-matter jurisdiction under 28 U.S.C. section 1332(a)(1) because there is complete diversity between Plaintiffs, who are citizens of South Carolina, and Defendant, who is a citizen of Arizona.

16. The amount in controversy exceeds $75,000 for Plaintiff Dusty Button individually, exclusive of interest and costs. Dusty's individual damages include reputational harm, lost and impaired professional opportunities, lost prospective contracts and endorsements, emotional distress, presumed damages for defamation per se where available, and punitive damages. Dusty's individual damages are alleged in good faith to exceed $75,000.

17. Before the reputational destruction caused by the 2021 publicity and later republications, Dusty generated substantial income through reputation-based sponsorships, appearances, teaching, brand relationships, and professional engagements, including approximately $10,000 for a single event and more than $200,000 in cumulative sponsorships and professional opportunities over time. Because Dusty's work depended on reputation, public trust, and word-of-mouth

referrals, Defendant's renewed public accusation that she was a 'sexual predator' foreseeably damaged opportunities worth more than $75,000.

18. The amount in controversy exceeds $75,000 for Plaintiff Mitchell Taylor Button individually, exclusive of interest and costs. Taylor's individual damages include reputational harm, lost and impaired automotive/business opportunities, lost prospective contracts and professional relationships, emotional distress, presumed damages for defamation per se where available, and punitive damages. Taylor's individual damages are alleged in good faith to exceed $75,000.

19. Before the reputational destruction caused by the 2021 publicity and later republications, Taylor generated substantial value through reputation-based automotive work, sponsorships, collaborations, events, builds, brand relationships, and professional opportunities. Taylor previously received sponsorship compensation exceeding $150,000 in connection with a single major automotive event, with additional paid opportunities arising from that exposure. Because Taylor's work depended on reputation, public trust, and industry relationships, Defendant's renewed public accusation that Taylor 'diddled kids' foreseeably damaged opportunities worth more than $75,000.

20. Plaintiffs do not aggregate damages for jurisdictional purposes. Each Plaintiff independently alleges an amount in controversy exceeding $75,000, exclusive of interest and costs. The historical financial examples above describe the scale and nature of Plaintiffs' respective professional activities; they are not allegations that

Defendant caused the loss of those historical payments. Plaintiffs seek recovery for the individual reputational, professional, and emotional injuries caused or aggravated by Defendant's own publications, together with presumed and punitive damages where legally available.

21. Venue is proper in this District under 28 U.S.C. section 1391(b)(1) and (b)(2) because Defendant resides in Arizona and a substantial part of the events or omissions giving rise to the claims occurred in Arizona, including Defendant's publication of statements from Arizona and/or through an Arizona-based Defendant's social-media account.

## FACTUAL ALLEGATIONS

22. In 2021, a civil lawsuit was filed in the United States District Court for the District of Nevada, captioned Humphries et al. v. Button et al., Case No. 2:21-cv-01412-ART-EJY. The Nevada case asserts disputed civil claims. Plaintiffs deny the allegations in that case.

23. The Nevada case is not a criminal case. It has not resulted in any criminal charge, criminal prosecution, criminal conviction, or judicial finding that Plaintiffs committed sexual abuse, child sexual misconduct, sex trafficking, or other criminal sexual misconduct.

24. After the 2021 publicity, Plaintiffs substantially withdrew from public-facing social media and professional promotion. Plaintiffs were not voluntarily courting

public controversy; they were attempting to survive, defend themselves, and later rebuild their names and work after years of reputational destruction.

25. In or around 2023, Plaintiffs created public-facing informational accounts, including @we_the_buttons and/or @wethebuttons, to provide accurate information, public filings, and Plaintiffs' position concerning the Nevada case and related litigation. Those accounts existed in part because false online accusations had continued to damage Plaintiffs and because Plaintiffs needed a way to correct misinformation.

26. The Nevada case and other public filings contained Plaintiffs' denials and their challenges to the allegations. Plaintiffs do not rely on the mere absence of criminal charges as proof that the underlying conduct did not occur. Plaintiffs affirmatively deny committing the misconduct Defendant attributed to them, as alleged in paragraph 33.

27. By late 2024 and early 2025, Plaintiffs had begun to see renewed professional interest and re-engagement from prior or prospective industry contacts. Plaintiffs allege that Defendant's statements were made during that recovery period and foreseeably disrupted the fragile process of rebuilding relationships that depended on public trust.

28. Before Plaintiffs discovered the comments in or around May or June 2025, Defendant published the statement 'He diddled kids' in a public Instagram comment thread on the account @toyotires. Plaintiffs cannot presently identify

the exact initial publication date from the preserved screenshots, which display a relative comment age rather than an exact publication date, as described in paragraph 43.

29. In the same @toyotires comment thread, Defendant further stated: 'Yeah just google his name. Husband wife combo. Pretty sad story knowing people would do that.'

30. On or about May 2025, Defendant published another public Instagram comment stating: 'We all know what they did. Sexual predators like these two don't deserve a platform.'

31. Defendant's statements were about Plaintiffs. In the @toyotires thread, one user asked what had happened to Taylor, and another comment identified him by the name Mitchell Button. The phrase 'He diddled kids' referred to Taylor. Defendant's related 'Husband wife combo' comment connected Dusty, Taylor's wife, to the same accusation. The separate statement 'Sexual predators like these two' also referred to both Plaintiffs.

32. Defendant's statements were statements of fact or reasonably implied assertions of fact. Defendant did not say he was merely discussing unproven allegations. Defendant did not say Plaintiffs denied the allegations. Defendant did not say no criminal charges or convictions existed. Instead, Defendant stated that Plaintiffs did commit the conduct. Under Milkovich and Yetman, a speaker cannot avoid liability by calling or implying a factual accusation as casual online commentary

when the ordinary reader would reasonably understand the statement to assert actual facts.

33. Defendant's statements were false. Plaintiffs did not commit the criminal/sexual misconduct stated or implied by Defendant, and no court or criminal authority has found otherwise.

34. Defendant's statements were defamatory per se because they accused Plaintiffs of serious sexual misconduct, criminal conduct, child sexual abuse, predatory conduct, and conduct incompatible with Plaintiffs' professions and reputations.

35. Defendant published the statements to third parties. The comments quoted in paragraphs 28 and 29 appeared in a public comment thread on @toyotires. A user with the account name @gymrattmatt replied directly to Defendant's account after the 'He diddled kids' comment with an expression of apparent shock. Plaintiffs preserved screenshots showing Defendant's comments and this third-party response. This allegation of actual third-party receipt rests on the displayed exchange, not merely on the possibility that members of the public could view the comments.

36. The profile associated with Defendant's commenting account displayed the name Nick Kingsley and approximately 1,716 followers in a preserved screenshot. The comments at issue appeared on @toyotires, not merely on Defendant's own profile. Their placement in that automotive-industry setting was relevant to Taylor's professional reputation and business relationships. Plaintiffs do not

equate Defendant's follower count with the number of people who actually viewed the comments.

37. Defendant's statements also harmed Dusty because they accused her personally of being a sexual predator, damaged her reputation as a former professional dancer and public-facing professional, and renewed public hostility toward her in communities connected to dance, social media, and professional opportunities.

38. Defendant followed Plaintiffs' informational Instagram account. Before his May 2025 publication, both Dusty Button and Mitchell Taylor Button personally observed Defendant's Instagram username in the viewer lists for stories displaying documents concerning the Nevada allegations. Plaintiffs base this allegation on their own contemporaneous observations of those viewer lists.

39. Plaintiffs used their informational account to display documents and discuss contradictions in the Nevada allegations. The account also provided a Google Drive link to litigation materials, including Plaintiffs' motion for summary judgment dated January 6, 2025 and supporting materials. In that motion, Plaintiffs challenged the allegations by comparing them with deposition testimony, contemporaneous communications, and other records. These were Plaintiffs' evidentiary arguments, not a judicial determination that all allegations were false.

40. After the story views described above, Defendant published the May 2025 statement: "We all know what they did. Sexual predators like these two don't

deserve a platform." Plaintiffs allege that Defendant's exposure to the content displayed in those stories before this publication is relevant to whether he knew his accusation was false or entertained serious doubts about its truth when he published it.

41. Defendant's statement that Plaintiffs were 'sexual predators' who did not 'deserve a platform' supports an inference that Defendant intended to interfere with Plaintiffs' professional re-entry, reputation, and ability to rebuild public-facing opportunities.

42. Shortly after Plaintiffs observed Defendant's username in the story viewer lists, Defendant blocked Plaintiffs' informational account. When Plaintiffs attempted to capture screenshots of those viewer lists, his username was no longer visible, and Plaintiffs were unable to preserve a screenshot identifying him as a viewer. Defendant later unblocked the account and then blocked it again. Plaintiffs describe that sequence from their personal observations. Separately, the preserved @toyotires thread shows Plaintiffs posting a reply tagging Defendant's account, denying Taylor committed the alleged conduct, and stating that Plaintiffs intended to sue. Plaintiffs do not allege that a posted tag, a failed comment, or an attempted direct message by itself establishes that Defendant received or read a communication.

43. Plaintiffs discovered the older @toyotires comments in or around May or June 2025. The preserved screenshots display 'Fri May 30' and show the comments

quoted in paragraphs 28 and 29 with the relative age label '23w.' That display does not establish an exact initial publication date. Plaintiffs' discovery of these older comments is distinct from their earlier observations of Defendant's username in story viewer lists before the separate May 2025 publication alleged in paragraph 30.

44. Defendant's deletion of comments impaired Plaintiffs' ability to identify the full scope of publication, republication, audience reach, engagement, and resulting damages before discovery.

45. The direct third-party reply described in paragraph 35 shows that Defendant's accusation reached another user. Plaintiffs allege on information and belief that additional users in the automotive community also saw the comments, based on their publication in the public @toyotires thread. Plaintiffs do not presently know the full number or identities of those viewers.

46. Plaintiffs' respective industries are reputation-driven. Professional opportunities in dance, instruction, sponsorships, automotive branding, builds, and collaborations often depend on trust, referrals, and public perception. Toyo Tires was among the companies with which Plaintiffs had prior automotive-industry relationships associated with Button Built projects. Defendant's comments therefore appeared in an industry-facing setting connected to Plaintiffs' professional history. Plaintiffs allege that accusations of sexual predation and child sexual misconduct

in that setting impaired the trust on which their professional opportunities depended.

47. Plaintiffs allege on information and belief that Defendant's statements caused new and incremental harm after the original 2021 publicity. Plaintiffs do not allege Defendant caused every injury arising from the Nevada lawsuit or other publications. Plaintiffs allege Defendant caused separate, renewed, aggravated, and additional harm by republishing the accusations as present-tense facts during Plaintiffs' attempted recovery period. Defendant is liable for harm proximately caused by his own publication even if other publications or lawsuits also caused separate harm.

48. Before Defendant's statements resurfaced, Plaintiffs had begun attempting to repair professional relationships and re-engage with sponsors, clients, employers, collaborators, and other professional contacts. Defendant's comments undermined those efforts by reviving and amplifying the most damaging accusations in categorical language.

49. Plaintiffs do not seek to hold Defendant liable for losses caused solely by the Nevada case, media publications, or other defendants in separate cases. Plaintiffs seek to hold Defendant liable for his own publications and the separate, later harm those publications caused or aggravated.

50. Defendant's statements caused Taylor individual harm, including renewed reputational damage in the automotive community, impairment of business and

professional relationships, loss of prospective work, humiliation, anxiety, sleep disruption, and emotional distress. Button Built projects could include paid builds, sponsored or provided vehicles, parts relationships, sponsor support, industry collaborations, media exposure, and future projects. Plaintiffs' least expensive major Button Built project was approximately $200,000 in total project value. That figure describes historical project scale, not Taylor's net income from a project or an allegation that Defendant caused a particular $200,000 contract to be cancelled. Taylor seeks his own losses and injuries attributable to Defendant's publications, not automatic recovery of the entire value of a historical build.

51. Defendant's statements caused Dusty individual harm, including renewed reputational damage, impairment of professional and public-facing opportunities, loss of prospective work or relationships, humiliation, anxiety, sleep disruption, trauma aggravation, and emotional distress. Dusty was part of the public-facing Button Built brand and helped create the cross-industry visibility, credibility, and sponsorship value associated with that work. Defendant's statements foreseeably impaired Dusty's ability to secure, continue, or restore reputation-based opportunities, including sponsorships, appearances, collaborative work, public-facing brand relationships, and opportunities connected to the Button Built business ecosystem.

52. Defendant's statements caused severe emotional distress to Taylor. Upon learning of Defendant's accusations, Taylor experienced acute anxiety, sleeplessness,

severe humiliation, anger, and frustration. He experienced distress over renewed public accusations against his family name, impairment of his ability to focus on rebuilding work, and worsening fear that the false sexual/criminal narrative would continue affecting his family, business relationships, and future industry participation. Plaintiffs allege these reactions to Defendant's publications as an aggravation of, and not a substitute description for, the distress caused by earlier publicity.

53. Defendant's statements caused severe emotional distress to Dusty. Upon learning of Defendant's accusations, Dusty experienced panic, acute humiliation, mental anguish, and renewed fear regarding her personal and professional safety. She also experienced anxiety, sleep disruption, trauma aggravation, and impairment of her ability to rebuild professional and public-facing relationships. The accusation linking her to child sexual misconduct was particularly distressing because her work as a ballet instructor and choreographer depended on parental trust. Plaintiffs allege renewed and aggravated distress from Defendant's publications, distinct from the existence of earlier reputational harm.

54. Defendant's statements were not harmless internet chatter. They accused Plaintiffs of the kind of sexual and criminal conduct that destroys employability, sponsorship, public-facing work, dance-related reputation, automotive/business reputation, and ordinary community standing.

55. Defendant's statements were not protected opinion because they conveyed provably false assertions of fact: that Plaintiffs committed sexual misconduct, that Taylor 'diddled kids,' and that both Plaintiffs were 'sexual predators.'

56. Defendant's statements were not substantially true. A disputed civil complaint is not proof that Plaintiffs committed sexual crimes, child sexual misconduct, or predatory sexual conduct.

57. Defendant's statements were not privileged. Defendant was not making statements in a judicial proceeding, was not fairly reporting official proceedings, and did not accurately describe the disputed civil allegations as allegations.

58. Plaintiffs have been damaged in an amount to be proven at trial, including presumed damages where available, actual damages, special damages, reputational damages, emotional-distress damages, and punitive damages.

COUNT I - DEFAMATION PER SE

59. Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.

60. Defendant published false statements of fact about Plaintiffs to third parties.

61. Defendant's statements accused Plaintiffs of criminal conduct, sexual misconduct, child sexual abuse, predatory conduct, and conduct incompatible with their professions and reputations.

62. The statements were false and defamatory per se under Arizona law because they imputed serious criminal conduct, sexual misconduct, moral turpitude, and conduct that would tend to injure Plaintiffs in their professions, trades, or

occupations. See Dube v. Likins, 216 Ariz. 406, 417-18 (Ct. App. 2007); Yetman, 168 Ariz. at 79-82; Restatement (Second) of Torts sections 570-573.

63. Defendant acted at least negligently. Plaintiffs further allege that Defendant acted with actual malice, meaning knowledge of falsity or subjective serious doubts about the truth of his accusations. As to the May 2025 publication, Plaintiffs rely on the prior story-view observations, displayed content, and subsequent publication described in paragraphs 38 through 42. Plaintiffs distinguish those observations from documents merely available through a link, which they cannot confirm Defendant opened. See St. Amant, 390 U.S. at 731-32; Harte-Hanks, 491 U.S. at 688, 692.

64. Defendant's statements were published without privilege and are not protected opinion.

65. Plaintiffs suffered harm as a direct and proximate result of Defendant's statements, including reputational injury, humiliation, emotional distress, lost professional opportunities, and other damages to be proven at trial.

COUNT II - FALSE LIGHT INVASION OF PRIVACY

66. Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.

67. Defendant publicly placed Plaintiffs in a false light by portraying them as persons who committed sexual crimes, child sexual abuse, predatory sexual conduct, or similar misconduct.

68. The false light would be highly offensive to a reasonable person because it portrayed Plaintiffs as having committed sexual abuse and predatory misconduct that Plaintiffs did not commit, as alleged in paragraph 33.

69. Defendant knew the portrayal was false or acted with reckless disregard for whether it was false. With respect to the May 2025 portrayal, Plaintiffs rely on the facts concerning Defendant's prior exposure to the stories and his subsequent publication described in paragraphs 38 through 42, rather than merely on the public availability of disputed litigation materials.

70. Plaintiffs suffered reputational harm, emotional distress, humiliation, mental anguish, and professional harm as a direct and proximate result.

COUNT III - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

71. Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.

72. Plaintiffs allege that Defendant's conduct was extreme and outrageous because he publicly accused them of child sexual misconduct and sexual predation as fact in an industry-facing forum connected to their professional reputations, expressly linked both spouses to the accusation, and separately asserted that they did not deserve a platform. Plaintiffs further allege that the May 2025 accusation followed Defendant's exposure to their informational stories as described above. These allegations concern Defendant's publications and their circumstances, not the conduct of counsel during this litigation.

73. Defendant either intended to cause severe emotional distress or recklessly disregarded the near certainty that public accusations of sexual predation and child sexual abuse would cause severe emotional distress and renewed professional harm.

74. Defendant's conduct caused severe emotional distress to each Plaintiff, including the individual symptoms and effects alleged in paragraphs 52 and 53.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendant and award:

a. Compensatory damages to Plaintiff Dusty Button in an amount to be determined at trial and exceeding $75,000, exclusive of interest and costs;

b. Compensatory damages to Plaintiff Mitchell Taylor Button in an amount to be determined at trial and exceeding $75,000, exclusive of interest and costs;

c. Presumed damages for defamation per se where permitted by law;

d. Punitive damages based on Defendant's malicious, willful, reckless, and/or oppressive conduct;

e. Injunctive relief requiring Defendant to remove and retract the false statements, to the extent permitted by law;

f. Costs and any fees permitted by law; and

g. Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Respectfully dated this 7th day of September, 2026

Dusty Button and Mitchell Taylor Button (pro se)

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing document was filed through the United States District Court of Arizona, Phoenix Division's ECF system on the 7th day of September, 2026.

Dated this 7th day of September, 2026,

/s/______________________________

Plaintiff Dusty Button (*Pro se*)

/s/______________________________

Plaintiff Mitchell Taylor Button (*Pro se*)